## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### PEORIA DIVISION

| | |
|---|---|
| AARON D. NEAL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:17-cv-1495 |
| | ) |
| JARED BIERBAUM and TYREL KLEIN, | ) |
| | ) |
| Defendants. | ) |

## ORDER & OPINION

This matter is before the Court on Defendants' Motion for Summary Judgment (Doc. 37). Plaintiff, proceeding pro se, has had the opportunity to respond (Docs. 39 and 40), and Defendants have filed a reply (Doc. 41). This matter is now ripe for decision.

### BACKGROUND

Defendant Jared Bierbaum, a police detective with the Bloomington Police Department, began investigating Plaintiff for drug-related activities around the beginning of 2017. Plaintiff's cousin served as a confidential informant to the police and performed multiple controlled purchases of narcotics from Plaintiff. The police department also placed a tracking device on a car Plaintiff was known to operate but which was not registered in his name.

On February 15, 2017, Plaintiff traveled to Danville, Illinois. Unbeknownst to Plaintiff, Defendant Bierbaum was tracking the vehicle and observed that it had traveled to Danville. Based on other facts uncovered in the investigation, Defendant Bierbaum believed Plaintiff was driving the vehicle to Danville for drug-related

activity. He asked the Street Crimes Unit, of which Defendant Tyrel Klein is a member, to arrest Plaintiff upon his return to Bloomington. There was no warrant for Plaintiff's arrest.

At some point between 8:00 p.m. and 9:40 p.m., Defendant Klein located and began following the car Plaintiff was operating. When Plaintiff exited I-74 at approximately 9:40 p.m., the vehicle was stopped and he was arrested. Defendant Klein approached the vehicle and ordered Plaintiff to exit it. According to Defendant Klein's affidavit, he believed he saw Plaintiff reach back into the car while exiting. When Plaintiff exited, another officer shouted "he put it in his mouth." In his affidavit, Defendant Klein states he thought he saw an item in Plaintiff's mouth and believed Plaintiff was attempting to ingest narcotics, so he took action to prevent the possible harm to Plaintiff and possible destruction of evidence. Defendant Klein struck Plaintiff in the mouth.[1]

Plaintiff was not, in fact, attempting to ingest narcotics. Plaintiff did have fake gold teeth in his mouth—which were dislodged by Defendant Klein's strike—but no evidence suggests Plaintiff was putting them in his mouth during the stop. In other words, it is undisputed that Defendant Klein's belief was mistaken.

## LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). It is on the non-movant—here Plaintiff—to show

---

[1] The stop was recorded by Defendant Klein's dashcam and bodycam, and the videos have been entered into evidence. (Docs. 37-4, 37-5).

that a genuine dispute of material fact exists. *Aregood v. Givaudan Flavors Corp.*, 904 F.3d 475, 482 (7th Cir. 2018). This requires showing there is evidence which could be admitted at trial from which a jury could find in favor of Plaintiff. *Skiba v. Ill. Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018). The Court is required to view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in his favor. *BRC Rubber & Plastics, Inc. v. Continental Carbon Co.*, 900 F.3d 529, 536 (7th Cir. 2018). But there is one exception, which may apply in this case: "When video footage firmly settles a factual issue, there is no genuine dispute about it, and [the court] will not indulge stories clearly contradicted by the footage. Of course, videos are sometimes unclear, incomplete, and fairly open to varying interpretations." *Horton v. Pobjecky*, 883 F.3d 941, 944 (7th Cir. 2018).

A second standard also shades the Court's lens in this case. Plaintiff is proceeding pro se. "Allegations in pro se pleadings are to be construed liberally, applying substantially less stringent standards than those applied to pleadings drafted by professional counsel." *Kincaid v. Vail*, 969 F.2d 594, 598 (7th Cir. 1992). But, of course, "there are no exemptions from the requirements of Rule 56 under the Federal Rules of Civil Procedure." *Thomas v. Meister Heating & Air Conditioning, Inc.*, No. 03-1038, 2006 WL 898144, at *2 (C.D. Ill. Apr. 6, 2006).

## DISCUSSION

Qualified immunity is a legal doctrine which makes government officials using their state-granted authority, such as the police officers here, immune from a lawsuit under § 1983 seeking monetary damages unless the plaintiff "can demonstrate that (1) the defendant violated a constitutional right; and (2) the right was clearly

3

established at the time, so that a reasonable state actor would know her conduct was unlawful." *Sebesta v. Davis*, 878 F.3d 226, 233 (7th Cir. 2017). For a right to be "clearly established" at the time of the violation, "existing precedent must have placed the . . . constitutional question beyond debate." *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (per curiam) (citation omitted). In other words, for Plaintiff to prevail, this Court must find both that Defendants violated Plaintiff's Fourth Amendment rights and that prior court decisions from the Supreme Court or Seventh Circuit make it such that a reasonable person aware of those decisions would know their conduct was a violation. *Mason-Funk v. City of Neenah*, 895 F.3d 504, 508–09 (7th Cir. 2018). The Court may "decid[e] which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

## I. The Stop & Arrest

"Probable cause to arrest is an absolute defense to any claim under Section 1983 against police officers for wrongful arrest, false imprisonment, or malicious prosecution." *Burritt v. Ditlefsen*, 807 F.3d 239, 249 (7th Cir. 2015) (citation omitted). Whether or not the police have an arrest warrant is not dispositive, because probable cause "is all that is needed to arrest a person in a public place; a warrant is not required." *Giddeon v. Flynn*, 830 F.3d 719, 720 (7th Cir. 2016). Probable cause is not a demanding standard. "[A]lthough it requires something more than a hunch, probable cause does not require a finding that it was more likely than not that the arrestee was engaged in criminal activity—the officer's belief that the arrestee was

4

committing a crime need only be reasonable." *Abbott v. Sangamon Cty., Ill.*, 705 F.3d 706, 714 (7th Cir. 2013).

There is no genuine dispute of material fact which would allow a jury to conclude that the officers did not have probable cause to arrest Plaintiff. Plaintiff does not dispute that he sold narcotics to a confidential informant, only whether surveillance of the sales would be admissible in a court of law. (Doc. 40). There is also no dispute that Defendant Bierbaum observed these sales and could identify Plaintiff as the seller. In other words, there is no genuine dispute that the facts, as Defendant Bierbaum knew them at the time, gave him probable cause to believe Plaintiff had committed a crime. Therefore, Defendant Bierbaum had probable cause to order Plaintiff's arrest and Defendant Klein had probable cause to carry it out. Defendants are entitled to qualified immunity on the claim that they arrested Plaintiff in violation of his Fourth Amendment rights.

Just because Defendants had probable cause to arrest Plaintiff does not mean they had probable cause to stop the car. The Court is required to read Plaintiff's Complaint liberally. *Kincaid*, 969 F.2d at 598. But not much liberality is required to see that Plaintiff states a claim for unlawful seizure as well as unlawful arrest. (Doc. 1 at 5 ("[T]he plaintiff states that the car he was driving wasn't in his name. So how could [Defendants] pull[ over] and stop the car [k]nowing if its him.")). An unlawful vehicle stop is, in itself, a Fourth Amendment violation, and can serve as the basis for damages on that ground. *Giddeon*, 830 F.3d at 720.

Although Defendants are arguing for qualified immunity and the existence of probable cause for the "arrest, search, and seizure" of Plaintiff, their motion does not

5

address how they knew—or why they had probable cause to believe—Plaintiff was the one driving the car when they initiated the stop.[2] Nor do they allege an independent basis, such as a traffic violation, which would allow the car to be pulled over regardless of the driver's identity. Their motion does not appear to have considered this claim.

The dispositive motion deadline has passed. (Doc. 23). However, the Court thinks Defendants' failure to move for summary judgment on this count was unintentional, and that no one would benefit from the costs and time of trial if Defendants' qualified immunity defense could be resolved through summary judgment. The Court will allow Defendants seven (7) days from the date of this order to file a second motion for summary judgment on this ground. The deadlines under Local Rule 7.1(D) will apply to responsive filings should Defendants decide to file a second summary judgment motion.

Plaintiff also raises for the first time in his response on this point an argument that his rights were violated by the tracking device being placed upon the car he was driving. (Doc. 40 at 2). This case is limited to the claims set forth in Plaintiff's Complaint (Doc. 1), which do not include a claim that the use of a GPS device violated Plaintiff's rights. The Court therefore cannot consider this argument. *Auston v. Schubnell*, 116 F.3d 251, 255 (7th Cir. 1997).

---

[2] The Court is concerned by the slippage between observation and inference on this point. Defendant Bierbaum's affidavit explains Plaintiff was known to drive the vehicle during the time period and goes on to say that he "observed through the GPS tracking unit that [Plaintiff] had traveled to Danville." (Doc. 37-1 at 2). While GPS tracking can detail where the car traveled, it does not reveal who was driving the car or riding in it. This is of paramount importance where probable cause to stop the vehicle depends on the identity of a person in the car. *Giddeon*, 830 F.3d at 720.

## II. Excessive Force[3]

### A. Whether Defendant Klein Violated Plaintiff's Rights

Plaintiff's claim of excessive force stems from Defendant Klein striking him in the mouth. Excessive force claims are evaluated under the Fourth Amendment's reasonableness standard. *Padula v. Leimbach*, 656 F.3d 595, 602 (7th Cir. 2011). The Court "must balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interest alleged to justify the intrusion." *Williams v. Ind. State Police Dep't*, 797 F.3d 468, 472 (7th Cir. 2015). "The appropriate question in [an excessive force] case is whether the officers' actions are objectively reasonable in light of the totality of the circumstances." *Fitzgerald v. Santoro*, 707 F.3d 725, 733 (7th Cir. 2013). "The officer's subjective belief or motivations are irrelevant." *Scott v. Edinburg*, 346 F.3d 752, 756 (7th Cir. 2003). Objective reasonableness is a question well suited for summary judgment because it "is a legal determination rather than a pure question of fact for the jury to decide." *Phillips v. Cmty. Ins. Corp.*, 678 F.3d 513, 520 (7th Cir. 2012). The Court must view the facts as known by the officer on the scene in light of the rapidly evolving nature of encounters—" 'Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers' violates the Fourth Amendment." *Sow v. Fortville Police Dep't*, 636 F.3d 293, 303 (7th Cir. 2011) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)).

---

[3] Defendants argue Defendant Bierbaum is not liable for excessive force because he was not present at Plaintiff's arrest, where the strike occurred. (Doc. 37 at 11). But Plaintiff explicitly brought the excessive force claim "against the officer that ass[au]lted him and arrested him." (Doc. 1 at 4). So there is no need for Defendants' argument—Defendant Bierbaum is not included in this claim and never has been.

It is helpful to examine the interests being balanced before diving into the facts. On the one hand, Plaintiff was, it is uncontested, struck in the mouth. The quantum of force is difficult to determine here but is quite important in determining the level of governmental intrusion. *Becker v. Elfreich*, 821 F.3d 920, 925–26 (7th Cir. 2016). The dashcam footage shows Plaintiff was struck only once, apparently with a closed fist. Plaintiff affirms he suffered injuries to his mouth, teeth, and gums. (Doc. 39 at 2). It is not possible to tell what force was behind the punch from this evidence. *See Becker*, 821 F.3d at 926. The Court thinks it is reasonable to view the force used in this specific strike as above *de minimis* force but nonetheless on the lower end of the "nonlethal-force spectrum." *Abbott*, 705 F.3d at 726 (holding the use of a taser "falls somewhere in the middle of the nonlethal-force spectrum."). The governmental interests asserted are preventing the destruction of evidence and preventing Plaintiff from harming himself. The Court agrees these interests are legitimate law enforcement interests which may justify the use of some force under some circumstances. *Pennington v. Terry*, 644 F. App'x 533, 544–46 (6th Cir. 2016). What remains is to determine whether this use of force under these circumstances was justified.

Defendant Klein argues his belief that Plaintiff had narcotics in his mouth was reasonable based upon four facts. First, and undisputed, Defendant Klein knew Plaintiff was under investigation for trafficking cocaine. Second, Defendant Klein claims to have seen Plaintiff reach back into the car and put something in his mouth. Third, another officer stated "he put it in his mouth." Fourth, Defendant Klein believed he saw something hanging out of Plaintiff's mouth. Having watched the

8

video footage from the bodycam and the dashcam, the Court concludes that a jury could disagree about the second fact, and Plaintiff has. Therefore, the Court will disregard the second fact in making its determination, as it is the subject of a genuine material dispute.[4]

The totality of the circumstances is still such that Defendant Klein's belief that Plaintiff had put narcotics in his mouth was justified. In particular, Defendant Klein's awareness of Plaintiff's conduct coupled with his knowledge that persons arrested for narcotics crimes sometimes ingest any narcotics on them would have primed a reasonable officer in his position to be alert to this particular danger. Believing Defendant had something hanging out of his mouth, a belief either caused or reinforced by the communicated observation of another officer, would lead a reasonable officer to believe that such conduct was occurring.

This does not end the inquiry, but rather sets the stage. Believing that a person suspected of trafficking in narcotics is attempting to ingest them, is it reasonably necessary to strike him in the mouth? One additional fact is important here. Plaintiff affirms that he complied fully with the arresting officers. Defendant Klein does not dispute this in his motion, and the video footage plausibly supports it.

In *Pennington*, officers observed an arrestee put pills in his mouth and, after at least a minute of ordering the arrestee to spit out whatever was in his mouth as well as restraining him and checking his mouth, may have used a Taser on him.[5] 644

---

[4] Of course, that Defendant Klein *believed* Plaintiff reached back into the vehicle may not be in dispute. But there is no need to discuss this point because his belief that Plaintiff was attempting to ingest narcotics was reasonable regardless.
[5] The Sixth Circuit found the Taser was not used, but the alternate holding is relevant here. 644 F. App'x at 541.

9

F. App'x at 535–36. The Sixth Circuit found that it was not clearly established as of 2012, when the incident in that case occurred, that tasing the arrestee to prevent him from swallowing narcotics was excessive force. *Id.* at 547. However, as the Sixth Circuit laid out the facts, "on the one hand, [the plaintiff] did not threaten the officers, was not resisting arrest, and was not attempting to flee, but on the other hand, was attempting to destroy evidence, disobeying police orders to spit out the pills, and potentially putting himself at risk of harm." *Id.* at 544. Other cases involving force used on arrestees attempting to ingest narcotics also involve some measure of resistance—at least refusing to spit out the narcotics, at most outright violence. *See, e.g.*, *Ellis v. Columbus Police Dep't*, No. 07-cv-124, 2009 WL 1663454, at *5–6 (N.D. Miss. June 15, 2009) (officers did not use excessive force where, following multiple warnings, arrestee refused to spit out a bag thought to contain cocaine and officers first tried to close his airway to force him to spit and ultimately tased him); *Morris v. Tulsa Police Dep't*, 09-cv-797, 2011 WL 1542920, at *5 (N.D. Okla. Apr. 21, 2011) (officer did not use excessive force where arrestee headbutted and kicked the officer following an attempt to remove cocaine from his mouth and the officer used a Taser and pepper spray to restrain him).

Defendant argues *Love v. Rockford Ill. Mun. Police Dep't.*, No. 08-cv-50254, 2013 WL 159246 (N.D. Ill. 2013), is the closest analogue to this case. There, as here, the officer struck an arrestee in the mouth to dislodge what the officer reasonably believed to be narcotics and, unlike in this case, tased him when that proved ineffective. *Id.* at *2. The Northern District held "[i]t is reasonable as a matter of law for [an officer] to strike [an arrestee] with his hand in an attempt to dislodge the

10

drugs from [the arrestee's] mouth." *Id.* But, as the Northern District explained, there was no evidence that the officer "used any force beyond that minimally necessary" to prevent the arrestee from ingesting narcotics. *Id.*

Because the plaintiff in *Love* failed to respond to the motion for summary judgment, rather than reciting the facts the Northern District "deemed all facts therein and supported by the record as admitted." *Id.* at *1. Looking at the docket in that case reveals that the officer ordered the arrestee to spit the narcotics out of his mouth, and the arrestee failed to do so, before force was used, as in the cases cited above. Defendants' Local Rule 56.1(a)(3) Statement at 3–4, *Love v. Rockford Ill. Mun. Police Dep't.*, No. 08-cv-50254 (N.D. Ill. Aug. 13, 2012), ECF No. 48 ("Detective Wassner ordered Plaintiff to 'Spit it out! Spit it out!' . . . . Plaintiff failed to obey Detective Wassner's lawful order to spit the narcotics out of his mouth."); Rockford Police Department and Detective John Wassner's Motion for Summary Judgment at 7, *Love v. Rockford Ill. Mun. Police Dep't.*, No. 08-cv-50254 (N.D. Ill. Aug. 13, 2012), ECF No. 47.

On the dashcam video in this case, an officer[6] does order Plaintiff to "spit it out." However, Defendant Klein's swing began before the order was given, and it was said *while* Defendant Klein struck Plaintiff in the mouth. Plaintiff had no opportunity to comply. This distinguishes the cases discussed above. An excessive force "inquiry is fact specific," *Becker*, 821 F.3d at 924 (citation omitted); here the specific facts differ in a crucial respect.

---

[6] The Court cannot determine from the video whether which officer gave the relevant order. Because the evidence is viewed in the light most favorable to the non-moving party, the Court proceeds assuming it was not Defendant Klein.

11

The Court cannot conclude that it was "reasonably necessary" to strike Plaintiff in the mouth where a spoken order might have completely resolved the dangers Defendant Klein believed to be impending. *Becker*, 821 F.3d at 925 (citation omitted). In excessive force cases, "the calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396–97. But even making such allowances, Defendant Klein's choice to use force was objectively unreasonable. The Court's review of cases similar to the instant one reveals that in materially identical circumstances—and indeed, circumstances where the officer is much more certain that narcotics are about to be ingested—officers have attempted to use commands before force. The lack of a case directly on point further suggests that Defendant Klein behaved in an atypical manner. Moreover, the fact that one of the officers on the scene attempted to order Plaintiff to spit out whatever was in his mouth shows that a reasonable officer in Defendant Klein's position would have attempted to use his voice before his fist.

The Court therefore holds it is objectively unreasonable to resort to force before commands, absent reason to believe that an order would be ineffective, where an arrestee has not resisted arrest but the arresting officers believe he is about to ingest narcotics. Defendant Tyrel Klein violated Plaintiff's Fourth Amendment rights by using excessive force on him. Unfortunately for Plaintiff, the fact that Defendant Klein violated his rights does not end the inquiry; the right must have been clearly established at the time of the violation.

### B. Whether the Right was Clearly Established

The Supreme Court has instructed that in determining whether a right was clearly established a court may not define it at a high level of generality. *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2014). Rather, the Court must determine "whether the violative nature of the *particular* conduct is clearly established," an inquiry which "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Id.* (citations omitted). "Such specificity is especially important in the Fourth Amendment context, where the [Supreme] Court has recognized that '[i]t is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts.'" *Id.* (quoting *Saucier v. Katz*, 533 U.S. 194, 205 (2001)). The upshot of this precedent is "[e]xcessive force cases always depend on the particular facts at hand, and accordingly, 'police officers are entitled to qualified immunity unless existing precedent squarely governs the facts at issue.'" *Mason-Funk*, 895 F.3d at 508 (quoting *Kisela*, 138 S. Ct. at 1153)).

This Court has not found any controlling precedent which clearly establishes that an officer acts with excessive force where he strikes an arrestee to dislodge what he reasonably believes to be narcotics before attempting to resolve the situation without using force. Although the Court thinks this violation can easily be divined from the general standard, as discussed above, the application of the general standard to the specific facts was not clearly established at the time of Plaintiff's arrest. The Court must therefore grant Defendant Klein's request for summary judgment on the ground that he is entitled to qualified immunity because his conduct did not violate clearly established law which squarely governs the facts at issue.

## CONCLUSION

For the reasons stated, Defendant's Motion for Summary Judgment (Doc. 37) is GRANTED with regard to Plaintiff's claims that Defendants unlawfully arrested him and used excessive force. The Court will allow Defendants seven (7) days from the date of this Order to file a motion for summary judgment on Plaintiff's claim that Defendants unlawfully seized him when they stopped the car he was driving.

SO ORDERED.

Entered this 30th day of November, 2018.

s/Joe B. McDade
JOE BILLY McDADE
United States Senior District Judge
